The next case today is Marion Ryan et al. versus U.S. Immigration and Customs Enforcers et al. Appeal number 191838. Thank you. Good morning. May it please the court. My name is Francesca Genova with the U.S. Department of Justice representing the federal appellants in this case. I would like to reserve five minutes for rebuttal. You may. Thank you. ICE has had a longstanding practice of doing discreet and targeted arrests in courthouses and has worked with Massachusetts state courts to have a current policy with the court's consent. The sole question in this appeal is whether Congress, sub salientio, resurrected and expanded a dead privilege against civil arrests to initiate civil suits for transient jurisdiction when it enacted and amended the INA. I will talk about two points of substance before I get to the balance of equities. The first, I will describe the privilege and discuss the status of the privilege when the INA was codified and amended. Then I will talk about the immigration scheme and talk about whether if it existed, whether the INA displaced it. The first point is, as this court is well aware, Congress is assumed to legislate against certain backdrop principles. There are two well-settled principles in this case that Congress would have been legislating against both in the 50s and in the amendments in 2006. The first is that Erie had already foreclosed the general common law and for courts to impose rules as a matter of policy and statutory interpretation. As the Supreme Court held in Astoria, the question is not whether the policy is wise but whether it was intended by the legislature. The second background principle is that by the time the INA was codified and amended, the privilege against arrest to initiate suit for transient jurisdiction had become a privilege against service of process for that transient jurisdiction and long before the INA was codified. International shoe had already been decided by the Supreme Court, which limited one's ability to invoke the privilege if a long-arm statute would have conferred jurisdiction on that individual coming into the jurisdiction for the suit. So the question before this court is whether the common law is, quote, so well established, end quote, that Congress is assumed to have incorporated it. There are a line of Supreme Court cases describing this, Pasquantino, Taylor, and Kraft all cited in our brief, and it's Pasquantino that is the lens through which is probably the most analogous to this case because that case involved a revenue rule about prohibiting the enforcement of foreign judgments in American courts or tax judgments, and the Supreme Court determined whether someone who was charged with wire fraud could invoke that privilege or that rule when they had cheated Canada out of taxes. The Supreme Court held that the common law rule did not apply, and it had three tests to make this determination. The first is that it described the sovereign capacity of the executive branch versus the third-party interest of the revenue rule. It also talked about the state of the common law when the statute was enacted. In that case, they were dealing with a single statute, not a statutory scheme that was enacted in 1952, and Congress looked at the state of the common law from the 18th through the 19th century, determined that it rested upon a privilege or on a different set of circumstances than the prior cases, and then finally... Counsel, could you step back a second and just help me on some of the facts here? In your brief, you point to a November 8, 2017 letter from the Chief Justice of the Massachusetts Trial Courts, I believe it is, to ICE as setting forth the procedures that the Massachusetts court are doing. I could not tell from your brief whether the federal government has agreed to be bound by the terms of that agreement, the terms of that letter. The federal government does follow what the court has put into place. I wouldn't say that it would be agreed to be bound by it, but it does follow it. Is there any finding as to whether or not the federal ICE has made any arrests that are not arrests that are anticipated in that November 8, 2017 letter from Massachusetts? There's no facts on this preliminary injunction record regarding that. In fact, there's no facts on the record at all involving arrests except for one discussion of one arrest where they don't name the person being arrested. It's just kind of a general... It's generalized enough that ICE was not able to identify what that arrest was to verify the facts. There's nothing on the record indicating that ICE is indeed or had indeed arrested any victim or witness. The record in this case is just the concern, this generalized concern about arrests, but the record lacks information regarding those arrests on this preliminary injunctions. Okay. So... Excuse me? Finish your answer because I have another question. I'm done, Your Honor. I can take another question. What is the federal statute specifically that authorizes these arrests if there is such a statute? There are a number of statutes, Your Honor. So 1226A has a broad authority to allow the government to arrest an alien, arrest and detain an alien. 1226C explicitly requires that the government shall take into custody certain immigrants charged with certain crimes when the alien is released without regard to whether the alien is released on parole, supervised release, probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense. The Supreme Court just last year in the Priyat v. Nielsen case just talked about 1226C and said that Congress was clearly admonishing the federal government to take those classes of alien into custody as soon as possible. It explicitly stated that it was requiring the... The Supreme Court stated that the statute was requiring the Secretary to, quote, impose mandatory detention without bond hearings immediately for safety's sake. And then 1229E explicitly addresses enforcement actions leading to removal proceedings in courthouses and describes what can be done with the information that is obtained in those enforcement actions. 1229E2B states that those actions when they are taken, quote, at a courthouse or in connection with that appearance of the alien at the courthouse, if the alien is appearing in connection with a protective order case, a child custody case, or other civil or criminal case relating to domestic violence, sexual assault, trafficking, or stalking in which the alien has been battered or subject to extreme cruelty, or if the alien is described in the U and T visa provisions, there's certain limitations on that information. But that statute makes it clear. That's good enough for my follow-up question is, does the Supremacy Clause have anything to do with this case? Yes. Well, so as a background principle, yes, it does not as a matter of what the issue is before this court. Because the issue before this court is simply statutory interpretation, but yes, Congress is also legislating against the background principle, as stated in Arizona and Herrera Inyo from this court, that it has broad authority over immigration laws. And when, and there's a line of cases as described in our brief about how state courts cannot dictate to the federal government or attempt to modify that policy. Herrera Inyo explicitly quotes the Supreme Court talking about how the Supremacy Clause permits no other result, notwithstanding that Congress may have limited or inhibited certain states' prerogatives to make substantive decisions. Let me, let me, let me ask you a bit about that. You're talking about whether the Supremacy Clause allows it or would enable it. But there's the separate question of even if the Supremacy Clause would allow or enable it, are there any particular rules by which Congress must bring to bear that authority, such as the plain statement rule of Gregory versus Ascroff? So to give you an example, suppose Massachusetts courts did not want these arrests being made because they felt that it interfered with the administration of justice in the Massachusetts state courthouses. They wanted to regulate behavior in those courthouses on their own. Then notwithstanding the Supremacy Clause, wouldn't there be an argument that a statute needs to more clearly state that it intends to override that state sovereign interest in administration of justice in its courthouses? No, Your Honor, because the cases make clear that state courts and the Constitution explicitly states that state courts must follow the federal laws. There's a case out of Rhode Island that we said in a brief, and FERC and other cases that talks about how the federal government's interest trumps states' local concerns. That's in applying the law, but in terms of the rules of behavior in a state courthouse that regulate, that are seen as central to the administration of justice by a state, what authority do you have that the federal government can, without plainly stating an intent to do so, preempt that and say that when its people go into the courthouse, they don't have to follow the rules? Five minutes remaining. Your Honor, the point regarding that is that the... Apologies. Can you repeat the question? I apologize. Sure. I'm positing a hypothetical that may not be applicable here, but that Massachusetts has a rule that says it's central to administration of justice so that we don't scare off witnesses and parties and interfere with proceedings. There'll be no civil arrests of any type in our courthouse itself. That's a rule. They'll also have another rule. No yelling at the judge in the courtroom. No cell phones in the courtroom. Are you saying that Congress, without plainly stating an intent to do so, could authorize ICE to go into a state courthouse that has those rules and not abide by them? I think, Your Honor, that would be a closer question because you would be dealing with potential concerns about intergovernmental immunity and other federalism concerns, but that isn't the case here because there is no Massachusetts state court policy. In fact, there's the opposite where they worked out a policy where arrests can take place in courthouses. Because under the Supremacy Clause, ICE is going and arresting individuals in public areas of the courthouse, so there would be Supremacy Clause concerns about permitting or blocking the federal government from areas that the public is allowed in. In this case, it is clear that Congress did recognize and authorize enforcement actions in courthouses through the arrest statute because 1229E does make clear that those enforcement actions can take place there. Plaintiffs argue that enforcement actions can be read more narrowly. That isn't the case on the face of the statute. First, the immigration system is always a civil removal system. There is no limitations on that authority based on the fact that it's a civil removal system. Even if someone is arrested under a criminal statute for a violation of illegal reentry or whatnot, that's still a criminal proceeding, but then at the end of that sentence, a person would still need to be arrested civilly. Reading enforcement action leading to a removal proceeding to solely mean criminal enforcement actions isn't apparent on the face of the text. Also, enforcement action, ICE has interpreted broadly, and there is no limitation on that legislation to have what plaintiffs allege that should be interpreted. So the statute... But counsel, isn't there a real question as to whether 1229E is in play at all? Your basic position, as I understand it, is that when Congress granted ICE, or ICE's predecessor, INS at the time, the power to arrest in the 1952 statute, that grant did not encompass a long-established and familiar common law principle that would have barred arrest even by a sovereign in a civil matter in a state court. Isn't that your basic position? Your Honor, we do describe how even if you accepted their premise that the 1952 statute would be relevant, it would not apply. However, as we argue in our brief, and we say a number of cases to this effect, Bilski, Brown and Williamson, Fausto, the Supreme Court has continually held that a statute is interpreted as a whole. It is the duty of the court to reconcile the different parts of the statutes. And so we would argue that the dispositive time for interpretation would be that later 2006 time period. However, we maintain that even in the 50s, this privilege did not exist and never applied to the sovereign. Which brings me to... I would like to alert this Court of some citations on that point that we did not include in our brief. For instance... Send us a letter. Excuse me? Send us a letter. Okay. Thank you, Your Honor. You can go ahead and argue it, but send us a letter also. I will do, Your Honor. That case is Wheelie v. Rickham. It's 92 English Reports 882 from 1694 that states that, quote, certainly no privilege is good against the king. There's another case, J.H. Baker Reports of Cases from the Time of King Henry VIII on page 93 to 94, which talks about, quote, no one shall never have privilege against the king. So even in the English cases... May I ask you, counsel, was Judge Tarraway a counsel in either of those cases? Yes, I was. May I reserve my remaining time for rebuttal? Pardon me? May I reserve my remaining time for rebuttal? Yes. Thank you. But you were on the base, too, Bruce. Quite probably, Juan. If you're ready, counsel, you may proceed. Thank you very much, Your Honor. And may it please the court, I won't weigh in on this discussion, but I do want to start. My name is David Zimmer. I'm a counsel for the plaintiffs in this case. And I want to start with Judge Corrado's question, because this is a really important issue. And I just want to be crystal clear that it is... One thing that I think is really indisputable is that under Massachusetts law, putting aside any sort of intervention from the federal government, these arrests would not be permitted. And very much because the state, as a matter of its sovereign interests, has established that they should not be. And I point the court to the Valley Bank case from the Massachusetts Supreme Judicial Court that's cited on page 39 of our brief. The Massachusetts SJC described this privilege against civil courthouse arrests and characterized it as a prerogative exerted by the sovereign power through the courts for the furtherance of the ends of justice. Justice Cipher's recent opinion, his single justice opinion for the SJC in the Doe case that's on page 146 of the joint appendix, just specifically endorses the privilege and describes it as an unremarkable proposition. What's the relevance of those cases, Mr. Zimmer? My fundamental understanding of a federal statute such as the 1952 Immigration and Naturalization Act is that Congress intends those statutes to operate uniformly throughout the country. So are you suggesting that the INA somehow mystically incorporated some state-by-state privilege? No, not at all. I want to get to that. I just wanted to be clear that, to the extent Massachusetts law is relevant, that it is very clear that it would apply here. But I'm asking you the further question of why would Massachusetts law be relevant? Right. No, and our primary argument does not depend on Massachusetts law and is based on... Do any of your arguments depend on Massachusetts law? Yeah. Well, yeah, sort of a backup argument that we make, which is that... So our primary argument is that the privilege that the INA incorporated the general background common law principle, which would apply uniformly as a matter of statutory interpretation, incorporating this well-settled common law privilege, that would not vary state-by-state. As I understand Judge Rakoff's opinion in the New York case, he concluded that at the very least, based on the Gregory v. Ashcroft and that line of cases, that at the very least, the INA doesn't authorize the agency to act in violation of the state law in which it's operating. That's not our primary argument, but to the extent the court adopts that approach, there's a greater... Yeah, but what I'm curious about is, I understand, I've read Judge Rakoff's opinion, I don't see that argument at all in your brief. Oh, to the contrary, Your Honor, I think we make it, again, it's a secondary argument, it's a backup argument. All right. But we do argue at several places that if the court, at the very least, the INA does not contain the Gregory v. Ashcroft clear statement that it intended to authorize the agency to act in violation of state law. But our primary argument, and the argument that Judge Talwani correctly accepted here, is that the INA, just like every other statute, is presumed to incorporate background common law principles. And the privilege against civil courthouse arrest is a long-standing and well-settled background common law principle that goes back half a millennium and was recognized, including in cases just in the years directly before the INA was enacted. Let me ask you about that, because I was having some trouble with that. When I look at the cases cited, I see personal actions, civil actions brought by private parties to vindicate private interests, and you make, I think, a pretty convincing argument that those at common law, arrests could not be used in those actions. And there isn't a lot of recent law because nobody's doing it, and the cause to make arrests. Fine. But then I look, there's also pretty clear that arrests by the sovereign in criminal cases could be made in the courthouse. What we seem to have a gap on is, what do you do when it's an arrest by the sovereign in a non-criminal proceeding, but to vindicate the sovereign's interest in a rule of law? I couldn't find in the briefs any case law on that, much less a long-established and familiar rule that would address what would seem to be the situation we have here. Sure. So let me answer that directly. I agree there's no case either way from either party on that. And what I would point the court to is the very cases the government cites, those were obviously cases involving the sovereign, and the distinction they drew was not, oh, well, this is an exception because it's a case brought by the sovereign. The distinction they drew was, this is a criminal case, this is a criminal arrest, and the distinction that all those cases, the very cases the government cites, Drew, is between criminal arrests and civil arrests. Well, then let's stay with that for a second. Put the sovereign to your side, and they say criminal. So you've got cases saying okay in criminal, and you've got cases saying no in these personal civil actions. What you still don't have are cases in which the interest being indicated arises out of a violation of law with the sovereign trying to vindicate that interest. You still got a gap there. But I don't think, I mean, there may be a gap in terms of fact pattern, but I don't think there's a gap in terms of principle in the sense that the principle repeated over and over again, including in the cases the government cites, is that this is a privilege with a wide application in the civil context, and a limited of no application in the criminal context. In private actions between private parties dealing with private affairs. But it just beggars credulity to say that a principle can be long established and familiar when you can't even cite a single analogous case in which the privilege was applied in the manner in which you seek to have the district court apply it. Well, I disagree with that, your honor, in the sense that what we're talking about is a question of what Congress intended when it enacted the statute. Congress was enacting a generic civil arrest provision against the background of centuries worth of cases, but applied this privilege in the context of civil arrest. None of which applied this case to a state sovereign trying to enforce governmental interest. But no case in the criminal or civil context suggests that that's a relevant distinction. The distinction that all the cases drew was between the civil and criminal law. And if you look at the Conley case in which the government relies, it in fact goes into detail as to why there's an exception specifically in the criminal context. And it doesn't talk about how the government has some heightened interest. It talks about how the government has a heightened interest in enforcing the criminal law. And if you look all the way back to the, oh, go ahead, sorry. I mean, you make a fair point that we simply can't point to the fact that, oh, in that case, someone was driving a black car and in this case, it's a red car. So the rule doesn't apply. The difference in facts need to be of some significance. But the difference between a civil personal right being vindicated where you're balancing private interests and a case in which what you're vindicating is the violation of a law by the state, that does seem to be the type of thing that one can reasonably think, geez, that seems pretty significant. Is there any case law telling me if it is significant or not? Well, so two responses, Your Honor. First, I guess I'd go back to the point that we're not saying that Congress couldn't have done this. The question is when Congress enacted this general civil arrest provision against the background of a privilege that had universally been characterized as applying to civil arrest. I'm not aware of a single case in any context exempting any class of civil arrest. The Congress could have spoken clearly to this issue and it didn't do so. And I'd also point the court to Blackstone. If you look at Book Three of Blackstone, there's an entire chapter in there that's about government suits that involve suits by the government, including the government enforcing sort of quintessentially governmental laws like tax collection and collecting fines and forfeitures. And the privilege is described in the process chapter, which is Chapter 19, that by its terms applies to all civil process described in that book. And nothing in Blackstone remotely suggests that Chapter 17 about governmental suits involving the government, civil suits involving the government, is somehow exempted from that. Again, I mean, it doesn't, again, I'm not claiming that we have a specific case, but I think the lack of cases here, combined with the fact that this privilege was always characterized as a generally applicable privilege to civil arrest, is really all that you need to know in order, again, not to say that Congress couldn't have done anything about it, but that the presumption applies that when Congress created this generic civil arrest scheme, when it authorized the federal agents to conduct civil arrests, that it would have done so with the background understanding that for 500 years, civil arrests could not have been carried out against people attending court. And that's especially true given that the purposes behind the privilege, as it exists in the common law, are directly applicable, if anything more applicable, in the context of this type of governmental civil arrest scheme. And I mean, I think that, you know, the two purposes that were consistently recognized as underlining the privileges as being the basis for it are ensuring that parties and witnesses are able to attend court and ensuring that courts aren't disrupted by civil arrests in the courts. And of course, there's no real dispute here that the government, that the directive and the government's courthouse arrest policy has undermined those purposes in exactly the way that common law courts have feared for centuries. The undisputed record evidence is that witnesses, and including domestic violence victims, have been deterred from attending court. I'd point the court to the brief from the 27 domestic violence organizations who describe women who have risked near-fatal abuse rather than appear in court out of fear of civil arrest. And perhaps even more dramatically, that after the district court's preliminary injunction in this case, that women in similar situations have found the courage to appear in court, in part by carrying copies of the district court's preliminary injunction with them when they appear in court. Mr. Zimmer, Mr. Zimmer, you began by citing two Massachusetts cases on civil arrests. Do either of them involve our situation, in other words, arrest by the sovereign at all? Yes. The Doe case, which is the recent single justice opinion from Justice Seifert, specifically involved in fact the very civil arrest issue here, and she described, and this is on page 146 of the record, she described it as an unremarkable proposition under state law that the Massachusetts privilege would apply to arrest by federal officers. She obviously recognized that that could be trumped by federal law, but that as a matter of... Go ahead. So what do we... I keep coming back to... Because I actually found your backup argument more attractive than your lead argument, except when I then... So I'm then puzzled on the facts on just what Massachusetts policy is, because I come back to that letter from Chief Justice of the trial court that postdates those two Massachusetts cases and doesn't seem to suggest that Massachusetts has a problem with a number of types of arrests that they describe in here, and we're told by the government's counsel today that those are the only arrests that are being made. So if that's true, what the injunction is doing is enjoining ICE from making arrests that the Massachusetts trial court itself has invited them to come in and make. I cannot disagree more strongly with that characterization of that letter. That letter was dealing with a specific issue, which was how to implement the SJC's decision in Lund. It was not engaging at a broad level with whether these arrests were permissible or not. And also, obviously the Massachusetts trial court cannot in a letter displace what are centuries of Massachusetts law, including the recent recognition by Justice Seifer on the SJC that Massachusetts state law, again, absent some sort of federal intrusion, would not permit these arrests, including by federal officers. And moreover, I also want to emphasize, and we cite this letter at, I forget exactly where it is, but it's where the government has actually made very, very clear, I think it's in footnote 10 on page 54 of our brief, that they will not follow state rules. They may have said that they'll follow this one, but when they don't like a rule, they will not follow it. The brief from the states, the amicus brief from the states makes this clear, and in fact describes situations in which New York has completely barred these arrests, and yet ICE has literally broken down the doors of the New York state courthouses in order to arrest somebody to conduct civil arrests. So I don't think there can be any serious dispute either that Massachusetts, in law from the SJC, would not permit these arrests if it were given the choice by the federal government, and or that that rule is something that the federal government has consistently refused to follow, including in other states that have made this clear, and I don't think that that letter really is intended to address this issue at all. It certainly doesn't, and obviously could not, displace SJC law, and of course, to the extent there was a question about Massachusetts law, that could obviously be certified. Mr. Zimmer, notwithstanding my dislike for this whole procedure, I keep coming back to the following, particularly in view of the statements that Judge Selyer made, that the need for uniformity in action, if, assuming one of the various statutes that were mentioned by your colleague applies to the actions of the ICE in this case, I am wondering why the Supremacy Clause doesn't decide this case? Sure. Well, the reason the Supremacy Clause doesn't decide this case is that the whole question here is a question of statutory interpretation, and so the question, we're not arguing in this appeal that Congress couldn't have authorized these arrests, we're arguing that it didn't authorize them, and there are really two different reasons. One is because the statute presumptively incorporates this background common law privilege, and second, at the very least, as Judge Rakoff concluded in his decision... Well, that's, you know, our whole argument is that that's not what the statute is. What the statute does, you know, in that situation, maybe the Supremacy Clause would decide this kind of statutory grant of authority here. The statute creates a generic, gives a generic authorization for civil courthouse arrests, and on all the cases we cite, Lexmark, Bank of America, all the cases we cite in our brief, when you have this type of generic grant of authority, it presumptively incorporates background common law principles, and similarly, under Gregory v. Ashcroft, it presumptively does not displace state background common law rules, and nothing in the statute, nothing in the statute requires where these civil arrests can take place. Nothing displaces the background common law rules or provides the clear statement under Gregory v. Ashcroft that would disrupt what the Massachusetts states have recognized is necessary to exercise a prerogative exerted by the sovereign power through the courts. That's how the SJC has described this privilege, and under Gregory v. Ashcroft, for that determination to be set aside requires a clear statement in the statute, and the statute says absolutely nothing about where these civil arrests can be carried out. Literally nothing at all. But the second part to this, following up on Judge Salyer's question, is the common law of Massachusetts the same throughout the United States? No, although we know, you know, I would note if you look at the Supreme Court's decision in Stewart v. Ramsey, Judge Rakoff recognized this, the states, the amicus brief submitted by the states makes this clear, this is a privilege, this isn't a uniquely Massachusetts privilege. I think most states, not all states, have a very similar rule, so, you know, the sort of approach that looks at state common law might lead to some variation, but I think it would be minimal, and there are parts of the INA that actually vary state by state. If you look at section 1357G, it recognizes that there are certain contexts in which local law Are you aware that there are at least two federal jurisdictions that don't have common law? What would be the rule in those jurisdictions? Well, I mean, to the extent that there was no, you know, background principle prohibiting these arrests, again, under sort of Judge Rakoff's approach, or the sort of Gregory v. Ashcroft approach, you know, if the state didn't prohibit the arrests, then, you know, under that approach, then ICE could carry out those arrests. Again, that's not our primary argument, is that it is uniform, and it follows the general common law background rule, but, you know, to the extent, as Judge Rakoff concluded, the rule sort of does, the statutory authorization doesn't, doesn't permit arrests in violation of state privilege, then if the state didn't have a privilege, then there would be no limitation. You know, let me just quickly address, if there aren't other questions on this issue, the section 1229E on which the government relies, and I think that, that provision really just doesn't say anything about the question before this court, in the sense that the government seems to concede that enforcement actions is broader than just civil arrests, as it plainly is. Our argument is not that enforcement actions doesn't include civil arrests. Our argument is that it's broader than that. The statute implies this, applies this broader term in the context of a whole series of locations of which courthouses are one example, and so the fact that you have this broad set of locations far broader than what we're challenging here, to a broad set of locations far broader than what we're challenging here, means that Congress would have written that provision the same way, regardless of the outcome of this case. It would have taken extremely contorted language to try to carve out the specific situation we're dealing with here, and so I think that that provision doesn't speak at all to the question before the court, and certainly doesn't speak directly to it. I also just want to quickly address Pasquantino, on which the government relies. I think, frankly, that Pasquantino actually supports our position, especially in the sense that it focuses so strongly on the purposes behind the privilege, and whether the purposes apply in the statutory context in which the common law rule is being considered. As I explained, and as Judge Rakoff makes very clear, and Judge Talwani made clear, the two purposes that have always motivated the common law privilege here are directly applicable in this context, and the government doesn't dispute that, and I think the Supreme Court's reasoning in Pasquantino really supports, not undermines, our position, especially because of that very close alignment between the privilege and the common law in here, and also because you have all these cases saying directly that the privilege applies in the civil context, and Congress was enacting exactly the type of civil arrest scheme, civil not criminal arrest scheme, that had long been recognized to be covered by the privilege. That's time. Thank you very much, Your Honor. Thank you, counsel. Counsel for the government, I think you have five minutes. Thank you, Your Honor. Six. So I'd like to just address a couple of the points that counsel made. First off, in regards to the scope of the privilege and matter of CDOE, the case as a factual matter doesn't state that under Massachusetts law, the privilege would apply to the government. It says, even assuming that that would be the case, there are reasons to not issue a written this case that had no precedent. Similarly, this court in Northern Light Co. talked about how when someone saw a privilege, that the privilege, that the court was not going to issue a broad per se rule when Lamb made clear that the privilege was not meant to be expanded upon the reason which it was founded. So in this case, it's not the case that courts, both courts, both the Massachusetts courts and the federal court, has recognized that any such privilege to the extent it did exist does not exist to allow a nationwide, not nationwide, statewide injunction, but applies in certain particularized individual cases when sought, and it's a privilege that can be waived. But that almost seems to be a revival of your lack of standing defense that you seem to have abandoned on appeal. Yes, Your Honor, we still contend that the parties don't have standing. We didn't focus on that in our brief, but obviously standing is not something you can waive. What do you mean you didn't focus on, well, first of all, it depends what type of standing, whether we're talking about statutory standing or constitutional standing. But normally, with the exception of claims that go to Article III jurisdiction, defenses can certainly be waived by the failure to brief arguments. Yes, and standing is one of those that cannot be waived, however, we did not press it. But certain types of standing cannot be waived. Yes, and our argument was constitutional standing. We argued that these parties don't, none of them have standing because you're dealing with two Massachusetts organizations, or entities who's having to deal with the fact that another and then also the one other organization. The district attorneys are arguing what would seem on its face to be a real and fairly direct interference with their ability to conduct business. So I think that they have to bring defendants, complainants, witnesses, other parties into state court proceedings, which they say, without any real rebuttal by the government, are in danger of being interrupted if these types of civil arrests are allowed. Yes, your honor, and I think, as we described at the district court, we would contend that those types of day-to-day modifications of behaviors is not cognizable, however, the I don't understand why not. I mean, it's easy to say you contend, but it seems to me if I'm sworn by law as the district attorney of X county, all right, I've got to uphold the law and I've got to enforce it, and you come along with a rule or a practice that is, or an interpretation of a statute that is going to inhibit clearly my ability to enforce it because it is going to make it harder for me to get cases before juries because jurors can be snapped up, witnesses can be snapped up, and so on and so forth. I'm struggling with the notion of under what principle that isn't a cognizable injury to the district attorney in her official capacity. As I mentioned, we didn't press that on appeal. But you're pressing it now. That's what I don't understand because I assumed from your brief that you had abandoned that position, but you've made it fairly clear that you're not. No, your honor, my intent was not to resurrect that argument. My intent was just that if this court was to determine standing, want to independently rule on standing, it could. Back to the first point, I understand how a lack of clarity about what the rules are in the state courthouses for arrests by the sovereign, how that helps you on the first argument. But on the Gregory versus Ashcroft type argument, if we found that otherwise had merit, don't we need to know what the rules are for administering justice inside the courthouses of Massachusetts and particularly how they would deal with civil arrests by the sovereign? So, your honor, I think that the point on that is just that Massachusetts state law is not as broad as the other, the opposing, sorry, Mr. Zimmer mentioned. So in this case, my question wasn't whether my question was simpler than that. Don't we need to know what it is? If we assume that Congress would not have authorized ICE to go in and conduct themselves in manners that are prohibited by state in the administration of justice in their courthouses, if we assume for a moment, I know you don't agree with that, then wouldn't the second step be we need to know what the rules are in Massachusetts and whether ICE is violating or proposing to violate them? Yes, your honor, accepting the premise that Congress would allow states to dictate to obviously we strongly object to, even accepting that premise, the state court rules in Massachusetts do not actually have this broad rule against civil arrest. It also deals with service of process and deals with transient jurisdiction. And I understand that's your position. Their position is otherwise. You point to this letter. They point to the, what is it, case of C, matter of C. Why isn't the simple thing for us to do is just ask the Massachusetts SJC, by certifying the question, please tell us what the rules are, the important rules for administering justice. Does this violate it or not in Massachusetts? And if they say it doesn't, you're probably home free on their second alternative argument, which may explain why it's their alternative argument. But if they say it does, then we've really got a Gregory versus Ashcroft deal on our hands where you'd have to win at the higher level. I think the issue, again, in that is that the case, the supremacy case law is clear that state courts must follow a federal law that's in the Constitution. And there are a line of cases talking about how states cannot dictate policy to the federal government. So I don't think. Well, but let me ask you if I could, Judge Torawaya. I mean, suppose Congress passed a law saying ICE agents can carry guns, period. And a state court, for safety reasons, because of several shootings in the courthouse, has passed a rule for all of its states that no one can have a gun going inside the courthouse. Are you saying ICE agents could insist on keeping their guns going in the courthouse? I think that would be a closer question. And I would need to do a supremacy clause analysis on that type of issue. But then how is this different? Why? How is this different? Why? This isn't a closer question. They've said ICE can make civil arrests, period, haven't said where. And if a state had a important administrative policy against that, then how is that different than the hypothetical I gave you? Because it would be an instance where it would be singling out the federal government and telling the federal government that it could not do something which would violate intergovernmental immunities. The state has no arrests in the courthouse other than people in custody. That's the state rule, including by the state. I think that would be a closer call, but that just isn't the case here. In this case, you have the Massachusetts courts coming to a procedure for ICE to arrest in happy with that policy and who are involved in that policy and in the matter of CEDAW case, attempting to get the federal court to do what the Massachusetts courts did not. The record here shows that they were participants in some process that led to the November 18, 2017 letter. The CPCS affidavit in this case describes how it was involved in the creation of the court policy and in the matter of CEDAW. That's from the Klein declaration. It looks like I had written down 916 in the appendix, but I don't know if I verified that. Since I'm out of time, for the foregoing reasons, unless there's any other questions, I would ask that this court reverse the district court's injunction in this case. You're going to provide us with a letter on those ancient cases? Yes, your honor. Thank you. I appreciate that. Is there a date by which you would like me to submit it? I can do it as soon as possible. You have 10 days. Okay. Thank you. Don't make it a brief. Just be brief. Yes. Understood. Book it for a circuit rule 28J. Great. Thank you. Thank you. This session of the Honorable United States Court of Appeals is now recessed until the next session of the court. God save the United States of America and this honorable court. Counsel, you may now disconnect from the meeting.